UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORDANY J. SALOMON and DONIELLE
LEWIS, individually and on behalf of all others
Similarly Situated, DWIGHT EDGHILL, and
SHANRAY POWELL, individually,

            Plaintiffs,

     v.

ADDERLEY INDUSTRIES, INC.,

            Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 16, 2013

11 Civ. 6043 (PAC)

**MEMORANDUM**
**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiffs Geordany J. Salomon and Donielle Lewis, on behalf of themselves and all

others similarly situated, and Dwight Edghill and Shanroy Powell, individually (collectively

"Plaintiffs") move for leave to file a Proposed Amended Complaint ("PAC") in this action,

adding American Communications Industries, Inc. ("ACI"), Lawrence Presser, Joseph Misseri,

and Vincent Cestaro as additional defendants, and adding an additional claim under New York

Labor Law Section 195. Defendant Adderley Industries, Inc. ("Adderley") opposes the motion.

For the following reasons, Plaintiffs' motion is granted with respect to adding new parties and

denied with respect to adding the new claim.

### BACKGROUND

    The Court assumes familiarity with its previous orders in this case. See Salomon v.

Adderley Indust., 847 F. Supp. 2d 561 (S.D.N.Y. 2012) (ECF No. 25.) Briefly stated, the cable

technician Plaintiffs assert class action claims against Adderley for failure to pay overtime wages

under the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 201, et seq., and New

York Labor Law ("NYLL"). (See ECF No. 1 ("Compl.") ¶ 1.) Pursuant to the scheduling order,

the parties set February 12, 2012 as the deadline to amend pleadings or add parties. (See ECF

No. 14 ¶ 3.) From April 1, 2012, through September 28, 2012, Adderley produced over 6,000

pages of responsive discovery documents, in addition to providing materials for Plaintiffs' counsel to review in person. (See ECF No. 106 ("Kessler Decl.") ¶¶ 7, 10, 12.) After the February 12, 2012 deadline for amending the pleadings passed, Plaintiffs claim to have learned for the first time through discovery that, inter alia, Adderley is a wholly-owned subsidiary of ACI and that Lawrence Presser, Joseph Misseri, and Vincent Cestaro are the sole shareholders of both Adderley and ACI. (Id. ¶ 8.) Plaintiffs also allegedly learned that Adderley and ACI share employees and the same physical address, Adderley utilizes ACI documents for its employees, and ACI processes background checks for Adderley employees. (Id.) Plaintiffs now seek to assert that the additional individual defendants had authority over personnel decisions, payroll, supervision of employees, and hiring and firing power over both Adderley and ACI employees. (See PAC, ECF 106-1 Ex. 1 ¶¶ 43–46, 59–62, 75–78, 91–94, 107–110, 123–126.)

Upon learning this information, Plaintiffs asked Adderley to consent to the requested amendment, but Adderley refused. (Kessler Decl. ¶ 9.) Shortly thereafter, the parties agreed to revisit the amendment issue after the completion of a settlement conference with the hope that the entire controversy would be resolved, but the parties failed to settle the matter. (See id. ¶¶ 9, 13.)

Adderley opposes Plaintiffs' motion on the grounds that: (1) Plaintiffs failed to demonstrate diligence in determining Plaintiffs' employers and adding such employers to the Complaint prior to the scheduling order deadline; (2) the PAC would cause undue delay and prejudice to Adderley; (3) the PAC would be futile because it fails to allege that the proposed defendants exerted sufficient control over Plaintiffs for employer liability to attach under the FLSA and NYLL; and (4) Plaintiffs have failed to demonstrate good cause to add a claim under NYLL § 195.

**DISCUSSION**

## I.   GOVERNING STANDARDS

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave

[to amend] when justice so requires."  "[I]t is within the sound discretion of the district court to

grant or deny leave to amend."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir.

2007).  The court may deny leave to amend "for good reason, including futility, bad faith, undue

delay, or undue prejudice to the opposing party."  Id. (citing Foman v. Davis, 371 U.S. 178, 182

(1962)).  Under Rule 15(a), "[t]he court should grant leave absent some reason" to the contrary.

McGee v. Dunn, No. 09 Civ. 6098 (FPS), 2013 WL 1628604, at *12 (S.D.N.Y. Apr. 16, 2013);

see Anthony v. City of New York, 339 F.3d 129, 138 n.5 (2d Cir. 2003) ("[W]e have interpreted

[Rule 15(a)] in favor of allowing the amendment absent a showing by the non-moving party of

bad faith or undue prejudice.")

Pursuant to Federal Rule of Civil Procedure 21, joinder of additional parties is

appropriate "at any time, on just terms."  This liberal standard is the same as that under Rule

15(a).  See Smith v. Manhattan Club Timeshare Ass'n, Inc., No. 12 Civ. 6363 (PKC), 2013 WL

1955882, at *9 (S.D.N.Y. May 10, 2013) (citations omitted).

"Where, as here, a scheduling order governs amendments to the complaint, . . . the lenient

standard under Rule 15(a) . . .  must be balanced against the requirement under [Federal] Rule [of

Civil Procedure] 16(b) that the Court's scheduling order shall not be modified except upon a

showing of good cause."  Holmes v. Grubman, 568 F.3d 329, 334–35 (2d Cir. 2009) (quotations

omitted).  In such situations, "the Rule 16(b) 'good cause' standard, rather than the more liberal

standard of Rule 15(a), governs[.]"  Parker v. Columbia Pictures Indus., 204 F.3d 326, 339–40

(2d Cir. 2000) (adopting analysis of other circuits).  "Rule 16(b), in allowing modifications of

3

scheduling orders only for good cause, provides the district courts discretion to ensure that limits on time to amend pleadings do not result in prejudice or hardship to either side." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243–44 (2d Cir. 2007). Whether good cause exists turns on the diligence of the moving party. Holmes, 568 F.3d at 335 (citations omitted).

In order to demonstrate good cause, a movant must demonstrate that he has been diligent, meaning that despite his having exercised diligence, the applicable deadline could not have been reasonably met. Perfect Pearl Co., Inc. v. Majestic Pear & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (citations omitted). Conversely, a movant fails to satisfy this burden when the proposed amendment is based on information the party knew or should have known in advance of the applicable deadline. Id. (collecting cases).

## II.   ANALYSIS

### A.   Diligence

The Court first addresses the Rule 16 good cause issue. Plaintiffs argue they were diligent and were unable to comply with the scheduling order deadline for amending the pleadings because Adderley did not produce the relevant documents until after the scheduling order deadline had passed. (See Kessler Decl. ¶ 8.) Plaintiffs contend that discovery was still ongoing, the new facts had yet to come to light, Plaintiffs promptly attempted to obtain consent to amendment from opposing counsel, and the parties agreed to table the amendment issue until after scheduled settlement negotiations. (See id. ¶¶ 8, 9, 11, 12; ECF No. 107 at 2–3.) Defendants argue that Plaintiffs were not diligent because they should have raised the issue of potential amendment before agreeing to a scheduling order that set the deadline for amendment as the same date for the exchange of discovery requests. (ECF No. 110 at 5.)

Plaintiffs have adequately demonstrated diligence prior to the expiration of the

scheduling order deadline. Because Plaintiffs learned about the putative employer status of the

additional parties through discovery after the expiration of the scheduling order deadline, their

inability to add the parties prior to the expiration of the deadline does not constitute a failure of

diligence. See Enzymotec Ltd. v. NBTY, Inc., 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010)

(holding that newly "discovered . . . facts underlying [the movant's] new cause of action . . . is

sufficient to show diligence"); e.g., Soroof Trading Dev. Co, Ltd. v. GE Microgen, Inc., 283

F.R.D. 142, 148–49 (S.D.N.Y. 2012) (finding diligence and allowing amendment in light of facts

allegedly learned during discovery). Plaintiffs cannot be faulted for failing to stipulate to a later

amendment deadline just in case discovery revealed other potentially liable parties.

### B.    Undue Delay and Prejudice

Having found that Plaintiffs have satisfied Rule 16(b), the Court addresses Defendants'

Rule 15(a) arguments opposing amendment. Under Rule 15(a), "[a]mendment may be

prejudicial when, among other things, it would require the opponent to expend significant

additional resources to conduct discovery and prepare for trial or significantly delay the

resolution of the dispute." AEP Energy Servs. Gas Holding Co. v. Bank of Am., 626 F.3d 699,

725–26 (2d Cir. 2010) (quotations omitted). "Mere delay, however, absent a showing of bad

faith or undue prejudice, does not provide a basis for the district court to deny the right to

amend." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quotations omitted).

However, "'the longer the period of an unexplained delay, the less will be required of the

nonmoving party in terms of a showing of prejudice.'" Park B. Smith, Inc. v. CHF Indust., Inc.,

811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) (quoting Block v. First Blood Assocs., 988 F.2d 344,

350 (2d Cir. 1993)).

Adderley has failed to show bad faith on the part of Plaintiffs or undue prejudice; at most is shows only "mere delay" as a consequence of additional discovery arising from the PAC. Adderley will not have to expend significant additional resources because the same claims in the original complaint are being alleged against the new parties and further (limited) discovery itself is not an adequate ground to deny an amendment to a complaint. See United States v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 889 F.2d 1248, 1255 (2d Cir. 1989) ("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."); e.g., JPMorgan Chase Bank, N.A. v. IDW Grp., LLC, No. 08 Civ. 9116 (PGG), 2009 WL 1357946, at **4–5 (S.D.N.Y. May 12, 2009) (finding no undue prejudice, even after discovery had concluded and amendment sought to add a new defendant). Accordingly, the Court will not deny amendment on these grounds.

## C.     Futility

Adderley argues that the PAC is futile because Plaintiffs have not sufficiently alleged that the additional defendants were "employers" under the FLSA and NYLL. The Court does not agree.

"Leave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (internal citation omitted); see Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."). Under the familiar standard of Federal Rule of Civil Procedure 12(b)(6), the Court must determine if the proposed amendment contains "sufficient factual matter" which, accepted as true, states a claim that is "'plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)). For the purposes of Adderley's futility argument, the Court also draws all reasonable

inferences in Plaintiffs' favor. See Avila v. Lease Finance Grp., LLC, No. 11 Civ. 8125 (KBF),

2012 WL 3165408, at *5 n.3 (S.D.N.Y. July 31, 2012).

"The FLSA defines 'employer' as including 'any person acting directly or indirectly in

the interest of an employer in relation to an employee.'" Chen v. TYT E. Corp., No. 10 Civ.

5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012) (quoting 29 U.S.C. § 203(d)).

"An entity 'employs' an individual under the FLSA if it 'suffer[s] or permit[s]' that individual to

work." Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 66 (2d Cir. 2003) (quoting 29 U.S.C. §

203(g)). For an individual to be an "employer," however, there must be more than just

"[e]vidence that [the] individual is an owner or officer of a company, or otherwise makes

corporate decisions that have nothing to do with an employee's function . . . . Instead, to be an

'employer,' an individual defendant must possess control over a company's actual 'operations'

in a manner that relates to a plaintiff's employment." Irizarry v. Catsimatidis, No. 11-4035-cv,

2013 WL 3388443, at *8 (2d Cir. July 9, 2013). Indicia of such control include "involvement in

a company in a manner that affects employment-related factors such as workplace conditions and

operations, personnel, or compensation." Id.

For the purposes of the FLSA, the determination of whether an employer-employee

relationship exists "should be grounded in 'economic reality rather than technical concepts.'" Id.

at *3 (quoting Barfield v. New York City Health & Hosp. Corp., 537 F.3d 132, 141 (2d Cir.

2008)). The Second Circuit has identified four factors relevant to the "economic realities" test:

"whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised

and controlled employee work schedules or conditions of employment, (3) determined the rate

and method of payment, and (4) maintained employment records." Id. (quotations omitted). The

Second Circuit has also discussed several factors used "to assess whether an entity that lacked formal control nevertheless exercised functional control over a worker." Id. at *4 (quotations omitted). These factors include:

> (1) whether [the putative joint employer]'s premises and equipment were used for the plaintiffs' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the putative joint employer]'s process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [putative joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the putative joint employer]. Zheng, 355 F.3d at 71–72.

Together, the above-listed questions "provide 'a nonexclusive and overlapping set of factors'" for determining employment status under the FLSA. Irizarry, 2013 WL 3388443, at *4 (quotations omitted); see Zheng, 355 F.3d at 75–76.

In addition, under the "integrated enterprise" doctrine, the Court may consider the "'(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership'" of a corporate parent and subsidiary to determine if they should be treated as a single employer under the FLSA. Chen, 2012 WL 5871617, at *3 (quoting Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996)). No single factor is dispositive, but "control of labor relations is the central concern." Id.

Plaintiffs allege that Adderley is a wholly owned subsidiary of ACI, that the two companies share employees, the same physical address, and the same documents, and that ACI processes employee information for Adderley and pays for parking tickets issued to vehicles owned by Adderley. (See PAC ¶¶ 138–148.) While Plaintiff's allegations in the PAC are somewhat sparse, Plaintiffs have additionally attached certain materials produced in discovery to support these allegations. (See Kessler Decl. ¶ 8 and exhibits thereto.) At this stage of the

proceedings, these allegations and materials are sufficient to plausibly allege ACI and Adderley are an integrated enterprise under the FLSA. See Perez v. Westchester Foreign Autos, Inc., No. 11 Civ. 6091 (ER), 2013 WL 749497, at **7–8 (S.D.N.Y. Feb. 28, 2013).

Plaintiffs also allege that the proposed individual defendants were owners and corporate officers of Adderley and ACI, and had authority over matters including payroll, personnel, and the supervision and hiring and firing of employees of both companies. (PAC ¶¶ 43–130.) Discovery allegedly supports the assertion that Messers. Presser, Misseri, and Cestaro are the sole shareholders of both Adderley and ACI. (Kessler Decl. ¶ 8). Under the FLSA, these allegations are sufficient to plausibly allege employer status. See Irizarry, 2013 WL 3388443, at *15 (holding owner of company qualified as an employer due to, inter alia, his authority to hire and fire employees and overall financial control of company); Perez, 2013 WL 749497, at *8.

The NYLL similarly "defines 'employer' as 'any person . . . employing any individual in any occupation, industry, trade, business or service' or 'any individual . . . acting as employer.'" Irizarry, 2013 WL 3388443, at *16 (quoting N.Y. Lab. Law. §§ 190(3), 651(6)). "The definition of 'employed' under the NYLL is that a person is 'permitted or suffered to work.'" Id. (quoting N.Y. Lab. Law § 2(7)).[1] Under the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Bynog v. Cipriani Grp., Inc., 802 N.E.2d 1090, 1092–93 (N.Y. 2003). "[C]ontrol over the means is the more important factor to be considered." In re Ted is Back Corp., 475 N.E.2d 113, 114 (N.Y. 1984).

---

[1] While several courts in this Circuit have interpreted these definitions under the FLSA and NYLL to be coextensive, see, e.g., Duarte v. Tri-State Physical Medicine & Rehabilitation P.C., No. 11 Civ. 3765 (NRB), 2012 WL 2847741, at *4 n.4 (S.D.N.Y. July 11, 2012), the Second Circuit recently noted that "this question has not been answered by the New York Court of Appeals." Irizarry, 2013 WL 3388443, at *16. Accordingly, the Court will consider the sufficiency of Plaintiffs' allegations under each law separately.

"Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." Bynog, 802 N.E.2d at 1093; see Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590, 598 (E.D.N.Y. 2012).

For similar reasons to those stated above, Plaintiffs allegations that the individual defendants had authority over personnel decisions, payroll, supervision of employees, and hiring and firing power over both Adderley and ACI employees, and that Adderley and ACI shared common ownership, payroll, funds, and materials, are sufficient to plausibly allege control and thus an employment relationship for both ACI and the individual defendants under the NYLL. See Connor v. Pier Sixty, LLC, 870 N.Y.S.2d 899, 901 (Sup. Ct. 2009) (holding that the "extent of . . . control is a matter which should be explored in discovery and is not an issue which is amenable to a motion to dismiss").

Accordingly, the Court finds that the PAC would not be futile.

### D.      The Wage Theft Prevention Act

Plaintiffs also seek to add an additional cause of action under the Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195(1)(a). (See PAC ¶¶ 240–243.) "The WTPA, which became effective on April 9, 2011, requires every employer to provide its employees a notice 'at the time of hiring,' and 'on or before February first of each subsequent year of the employee's employment,'" which "must contain, among other things, the rate of pay, allowances, the regular pay day, the name of the employer, the physical address of the employer's main office, and a mailing address and telephone number for the employer." Guan Ming Lin v. Benihana New York Corp., No. 10 Civ. 1335 (RA) (JCF), 2012 WL 7620734, at *2 (S.D.N.Y. Oct. 23, 2012) (quoting N.Y. Lab. Law § 195(1)(a)), adopted by 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013).

Adderley opposes the addition of this claim on the ground that Plaintiffs have failed to demonstrate "good cause" under Rule 16(b), specifically because Plaintiffs did not address this new cause of action in their memorandum of law in support of the motion to amend.  Plaintiffs concede that they failed to raise this new claim in their opening memorandum, but argue in their reply papers that they could not have asserted this claim at the time of the original complaint in this action because the claim was not ripe and state that because Defendants have not demonstrated any prejudice from the addition of this claim, it should be allowed.

Notwithstanding the fact that the WTPA claim could not have been included at the time of the Complaint, Plaintiffs have failed to satisfy the "good cause" standard under Rule 16(b). See Parker, 204 F.3d at 339–40.  Even if the Court were to consider the arguments Plaintiffs raised only in their reply papers, cf. Evangelista v. Ashcroft, 359 F.3d 145, 156 n.4 (2d Cir. 2004) ("[W]e will not consider an argument raised for the first time in a reply brief." (quotations omitted)), Plaintiffs' perfunctory argument falls far short of establishing "good cause" to justify the addition of this claim to this action.  Accordingly, this portion of Plaintiffs' motion is denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.  ACI and Messers. Presser, Misseri, and Cestaro are added to this action as additional defendants, but Plaintiff's claim under NYLL § 195 is disallowed.  The Clerk of Court is directed to terminate the motion at docket number 105.

Dated: New York, New York
      August 16, 2013

SO ORDERED

_____
PAUL A. CROTTY